HENRIETTA BRAUNSTEIN, INDIVIDUALLY, AND ON BE-
HALF OF BETTY LOU BRAUNSTEIN, PETITIONER, v.
KRAFT CORRUGATED CONTAINERS, INC., RESPOND-
ENT.

Decided January 20, 1941.

For the petitioner, *Kalisch & Kalisch.*

For the respondent, *John W. Taylor.*

The petitioner herein filed two petitions for compensation which, by a stipulation of the respective parties' attorneys, reflected in an order of this court, were consolidated for the purposes of trial. One petition claimed that on January 21st, 1938, Louis Braunstein, husband of the petitioner, while carrying the payroll of his employer, was held up by a robber and as the result of such holdup, serious further damage was caused to Louis Braunstein's already sclerotic heart and further alleged that as a result of said holdup, the said Louis Braunstein died on November 25th, 1938; and the other petition claimed that on November 25th, 1938, Louis Braunstein engaged in the exertion of digging away snow in order to get his automobile out, the facts being that the automobile was parked in the rear of his home, with the intention of attending certain duties for his employer, and as a result of

the exertion upon an already weakened heart, Louis Braunstein died on November 25th, 1938.

The petitioner and Louis Braunstein had one child, a girl, Betty Lou, who was born on May 21st, 1928.

Louis Braunstein, the petitioner's intestate, died on November 25th, 1938.

At the trial of the issue, the respondent admitted the holdup alleged in the petition but denied any causal relation between such holdup and the death.

The petitioner testified, that following the holdup, she noted a change in her husband; that he was cranky and lost the good color in his face which he had previously possessed and this appeared to continue and he seemed to slow up in his movements and at times would indicate a shortness of breath. The petitioner produced five doctors to support the claims made in the two petitions.

Dr. Nimaroff testified that on December 29th, 1937, he diagnosed the petitioner's condition as anxiety neurosis, cardiac neurosis and possible coronary sclerosis accompanied by sighing respiration while at rest, although the anxiety neurosis was not very serious, and the facts in the case indicate that up to this time his condition had not interfered noticeably in the performance of his duties as office manager and personnel director in his place of employment.

On January 22d, 1938, Dr. Cohen testified he found the deceased to be apprehensive, pale, exhibited shortness of breath with a profuse perspiration and precordial pains, all of which he diagnosed as coronary sclerosis, for which he gave the patient a drug to dilate the coronary vessels, and these conditions were apparent as late as July 11th, following, upon further examination by him.

Dr. Friedman examined the deceased on November 11th, 1938, and found him to be suffering with an enlarged heart with poor sounds, difficulty in getting his breath and pain in the chest accompanied by some fatty infiltration of the heart muscles, which he diagnosed as coronary sclerosis, and for which he gave medication.

The petitioner also introduced the testimony of one of the police officers, William Rogers, who responded to a telephone

call from police headquarters after the holdup and who found the deceased in a nervous condition, shaken and pale and several of the employes of the respondent company further testified that within a few weeks, the deceased had lost his good color possessed before the holdup and became pale, nervous and cranky, and thereupon the petitioner introduced the testimony of Drs. Alling and Green, two experts who refused to ascribe the holdup as the cause of the death of the petitioner's intestate, which occurred on November 25th, 1938, but did testify that the cause of death was the exertion attached to the attempt of the deceased to shovel away the snow about his automobile on November 25th, 1938. Dr. Alling further testified that previous to the exertion of November 25th, 1938, with the conditions present as testified to by Drs. Nimaroff, Cohen and Friedman, the deceased was suffering from a partial, permanent disability of approximately fifty per cent. of total.

On cross-examination of one of petitioner's lay witnesses, it was developed that the deceased had engaged in the playing of Badminton, but that around October 1st, 1938, apparently by reason of the development of the heart condition, he could no longer engage in this form of exercise, and it further appeared that the petitioner up to that time had lost no time from work and had received his weekly salary of $35 per week, so that it clearly appears, and I find that up to October 1st, 1938, the deceased was under temporary disability and during a greater part of that time was actually receiving the attention of doctors.

The respondent, so far as the medical aspect of the case is concerned, introduced the testimony of Dr. Olcott, who testified that as the result of the holdup in connection with the already weakened heart, the petitioner's intestate suffered an aggravation of this condition which created a disability of thirty per cent. of total.

From a consideration of all the testimony, it is my conclusion that the petitioner's intestate, the deceased, died as the result of the effort in attempting to extricate his automobile from the snow, but I am not satisfied that this occurrence arose out of or in the course of his employment, and I further con-

clude that the holdup was too remotely connected with his death to have been either the proximate or contributory cause of his death. I therefore find and determine from all the evidence, that the deceased suffered an accident arising out of and in the course of his employment with the respondent on January 21st, 1938; * * * that as a result of the accident he suffered a partial permanent disability equal to thirty per cent. of total.

\*   \*   \*   \*   \*   \*   \*

JOHN C. WEGNER,
*Deputy Commissioner.*